MARÍA C. PAGÁN ET AL., demandante y recurridos, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO ET AL., demandados y peticionarios

*Número:* CE-85-628 *Resuelto:* 22 de octubre de 1992

798

*Héctor Rivera Cruz, Secretario de Justicia, Dora T. Peñagarí-cano, Procuradora General Auxiliar*, abogados del Estado Libre Asociado de Puerto Rico; *Rafael Ocasio Rivera*, abo-gado de los recurridos.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Nos corresponde resolver en este caso si el Estado Libre Asociado de Puerto Rico (E.L.A.), a través del Departamento de la Vivienda, responde civilmente por actos u omisiones negligentes atribuibles a la Corporación de Renovación Urbana y Vivienda (C.R.U.V.).

# I

Dicha controversia tiene su génesis en los casos de *María C. Pagán, et al. v. Estado Libre Asociado de Puerto Rico, et al., y Paula María Primo de Rivera, etc. v. Corporación de Renovación Urbana y Vivienda, etc.*, en los cuales se incluye como codemandado al E.L.A. por unos alegados daños sufridos en distintos residenciales públicos propiedad de la C.R.U.V. Con relación a dichos daños, los demandantes le imputan negligencia a la C.R.U.V. En el primer caso se alega que la C.R.U.V. fue negligente al violentar su deber de conservar su propiedad en condiciones que garanticen la seguridad y la salud de los residentes y visitantes del Residencial Las Margaritas al mantener las escaleras de este complejo mojadas y sin alumbrado debido a filtraciones de agua. Fue a causa de estas condiciones que la codemandante María C. Pagán aduce haber sufrido una caída en dichas escaleras, lo cual provocó los daños por los que reclama compensación. En el segundo caso se le imputó el mismo tipo de negligencia a la C.R.U.V., pero con relación a los elevadores del Residencial Orquídeas. Debido al alegado mal funcionamiento de uno de los elevadores, el Sr. José Gil de la Madrid perdió la vida al intentar abordar el mismo cuando la puerta que da acceso al elevador se abrió sin que estuviera en ese piso la cabina, cayendo al vacío.[1]

Una vez instados los pleitos aludidos, el E.L.A. solicitó la desestimación de la demanda en lo que a él respecta bajo el fundamento de que la C.R.U.V. era una corporación pública con personalidad jurídica propia e independiente del Estado, con plena capacidad para demandar y ser demandada. Agregó el E.L.A. que el hecho de que esa en-

---

[1] Vista la Moción de Desistimiento Voluntario presentada en *Paula María Primo de Rivera, etc. v. C.R.U.V., etc.* (CE-85-833), el Tribunal Supremo ordenó el archivo del mismo y se dejó sin efecto la consolidación con el caso CE-85-628, *María C. Pagán, et al. v. Estado Libre Asociado de Puerto Rico, et al.* Véase Resolución de 6 de abril de 1989.

tidad estuviese adscrita al Departamento de la Vivienda no alteraba en nada su naturaleza corporativa.

Por su parte, los demandantes en el único caso ante nuestra consideración hoy, es decir, *María C. Pagán, et al. v. Estado Libre Asociado de Puerto Rico, et al.*, presentaron escrito en oposición a la Moción de Desestimación donde señalan que el Departamento de la Vivienda es el propietario y arrendador de las unidades que integran el Residencial Las Margaritas. Expusieron, además, que por virtud de la Ley Núm. 97 de 10 de junio de 1972 (3 L.P.R.A. sec. 441 *et seq.*), se adscribió la C.R.U.V. al Departamento de la Vivienda y se le transfirieron al Secretario todos los poderes y las facultades de la Junta de Directores de esa corporación, lo que resultó en una vinculación tal entre ambos organismos que ello constituía base legítima para incluirse al E.L.A. como parte codemandada.[2]

El tribunal de instancia acogió los planteamientos de los demandantes y declaró sin lugar la moción de desestimación del E.L.A. No conforme el Estado con dicha resolución, acude ante nos mediante escrito de *certiorari* imputándole al Tribunal a quo haber incidido al no desestimar la demanda en su contra. Expedimos el recurso y nos corresponde resolver.

## II

La C.R.U.V. fue creada mediante la Ley Núm. 88 de 22 de junio de 1957 "con el propósito de reorganizar los programas gubernamentales de vivienda pública y de renovación urbana que se habían establecido sucesivamente a partir de 1938. En el pasado, esta corporación pública desarrolló con mucho éxito un vigoroso programa de vivienda que logró proveer hogar seguro para miles de

---

[2] Como regla general, un departamento ejecutivo no tiene personalidad jurídica separada y distinta del Estado Libre Asociado (E.L.A.). *Rivera Maldonado v. E.L.A.*, 119 D.P.R. 74, 82 (1987).

familias". Exposición de Motivos de la Ley Núm. 55 de 9 de agosto de 1991, Leyes de Puerto Rico, pág. 232 (17 L.P.R.A. sec. 27 *et seq.*).

▰▰▰ Tras evaluar la poca efectividad de la C.R.U.V. ante los cambios acaecidos en los últimos años con respecto a la construcción, venta y alquiler de vivienda, y la crisis financiera que confrontaba, la Legislatura aprobó la Ley Núm. 55, *supra,* para autorizar la disolución de la C.R.U.V., a la vez que se estableció un "proceso ordenado de liquidación de las cuentas de esa corporación pública que le permita cumplir con el mayor número de sus responsabilidades financieras utilizando sus propios recursos". Leyes de Puerto Rico, pág. 233. Esta Ley Núm. 55 derogó la también citada Ley Núm. 88, la cual constituía la ley vigente al momento de los hechos ante nuestra consideración, y creó la Oficina para la Liquidación de las Cuentas de la Corporación de Renovación Urbana y Vivienda (la Oficina).

Procede que analicemos separadamente la responsabilidad del E.L.A., si alguna, por los actos u omisiones negligentes de la C.R.U.V. antes de que se autorizara su disolución mediante la citada Ley Núm. 55, así como también si existe responsabilidad del E.L.A. en la actualidad.

A. *La responsabilidad del E.L.A. por actos negligentes de la C.R.U.V.*

▰▰ Surge claro de la Ley Núm. 88, *supra*, ya derogada, que creó la C.R.U.V., que esa entidad fue instituida y organizada como una corporación pública. Declaraba esta ley: "Se crea una entidad pública, *corporativa* y política que se denominará 'Corporación de Renovación Urbana y Vivienda' ...." (Énfasis suplido.) Art. 2 de la Ley Núm. 88, *supra*, 17 L.P.R.A. ant. sec. 22.

▰▰ Ahora bien, procede examinar si al aprobarse la Ley Núm. 97, *supra*, la cual adscribió la C.R.U.V. al Departamento de la Vivienda, se intentó o su aprobación tuvo el

efecto de suprimir la naturaleza corporativa de esa entidad. Dispone el Art. 6 de la referida ley, 3 L.P.R.A. sec. 441e, lo siguiente:

> Se adscriben al Departamento [de la] Corporación de Renovación Urbana y Vivienda creada por las secs. 21 a 25 del Título 17; y el Banco de la Vivienda, creado por las secs. 901 a 922 del Título 7; ambos organismos continuarán funcionando como corporaciones públicas con las funciones y programas que dichas secciones o cualesquiera otras les haya conferido. Se transfieren al Secretario los poderes y facultades de las Juntas de Directores de ambas corporaciones y se suprimen dichas juntas.

Consideramos que es erróneo atribuir a la citada disposición la cualidad de suprimir la personalidad jurídica de la C.R.U.V. o de alterar su condición previa.

Es de todos sabido que el Estado, a través de la Rama Legislativa, goza de la facultad de conferirle a las instrumentalidades que crea la estructura organizativa, administrativa y funcional que estime más apropiada a fin de lograr el más óptimo y efectivo funcionamiento de las mismas. Una de las opciones que tiene a su disposición es el instrumento corporativo, el cual le otorga a la entidad pública cierta flexibilidad que facilita su funcionamiento en el campo dentro del cual se desempeña.

Este tipo de entidad pública aflora luego de la Primera Guerra Mundial como un nuevo instrumento de las naciones del mundo occidental para responder a las nacientes o novedosas realidades y a las múltiples tareas que enfrentaban. *Torres Ponce v. Jiménez*, 113 D.P.R. 58, 62 (1982). Asimismo, en sectores de la economía donde el empresario privado se abstuvo de actuar por los grandes riesgos en la inversión o en épocas de escasez de capital o de altas tasas contributivas sobre la ganancia, el Estado acudió a las corporaciones públicas como medio de garantizar la prestación de los servicios que se pudieran ver afectados. *Torres Ponce v. Jiménez*, supra, pág. 63. *The Public Corpo-*

*ration: A Comparative Symposium*, editado por W. Friedmonn, Canadá, Carswell Co., 1954, pág 542.

En Puerto Rico, las corporaciones públicas tienen su momento de mayor expansión a partir de 1940 cuando dio inicio el programa de desarrollo socioeconómico que adelantó el Gobierno de Puerto Rico para esa época. "Estas empresas gubernamentales se crearon con diversos propósitos, entre otros, para reducir los costos, mejorar los servicios ofrecidos por el estado y proveer la infraestructura necesaria para el crecimiento industrial." *McCrillis v. Aut. Navieras de P.R.*, 123 D.P.R. 113 (1989). Véase, además, C. Ramos de Santiago, *El Gobierno de Puerto Rico*, 2da ed. rev., Ed. U.P.R., 1979, págs. 654–657.

En el aludido caso de *Torres Ponce v. Jiménez*, aunque reconocimos la existencia de una gran variedad de corporaciones públicas, destacamos tres (3) tipos de entre las cuales hubiésemos podido situar a la ya disuelta C.R.U.V. Nos referimos a: (1) las agencias o departamentos de los gobiernos; (2) las corporaciones públicas creadas por estatuto, y (3) las corporaciones de emisión de acciones organizadas al amparo de las leyes de corporaciones privadas que son controladas parcial o totalmente por el Gobierno. Véase, además, *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467, 473 (1982). Evidentemente la C.R.U.V. perteneció al segundo tipo, en vista de la antes citada disposición que crea textualmente esta instrumentalidad como una corporación pública.

Ahora bien, no es el fundamento legislativo el único que avalaba la condición corporativa de esta entidad sino que, además, al examinarse los distintos criterios adoptados jurisprudencialmente, a fin de ponderar si determinada instrumentalidad es o no corporación pública, se puede identificar una conjunción de estos elementos con respecto a la C.R.U.V. que justificaba otorgarle ese calificativo. En *Canchani v. C.R.U.V.*, 105 D.P.R. 352 (1976), se hace alusión a varios de esos criterios, a saber:

(a) poseer ingresos propios;
(b) tener autonomía fiscal para realizar préstamos, emisión de bonos y cuentas bancarias;
(c) poseer propiedades;
(d) contar con una Junta de Directores;
(e) poder aceptar donaciones, y
(f) tener capacidad para concertar acuerdos o contratos.

En *A.A.A. v. Unión Empleados A.A.A.*, 105 D.P.R. 437, 455–456 (1976), se amplían dichos elementos por lo que esbozamos los criterios o factores siguientes para determinar bajo qué circunstancias una instrumentalidad del Gobierno funciona como empresa o negocio privado:

> si los empleados de la agencia concernida están cubiertos por la Ley de Personal del Estado Libre Asociado; si los servicios prestados por la agencia, por su naturaleza intrínseca, nunca han sido prestados por la empresa privada; si la agencia está capacitada para funcionar como una empresa o negocio privado; si la agencia de hecho funciona como una empresa o negocio privado; el grado de autonomía fiscal de que disfrute la agencia; el grado de autonomía administrativa de que goce; si se cobra o no un precio o tarifas por el servicio rendido (precio que debe ser básicamente equivalente al valor del servicio); si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada; y si la agencia tiene o no la capacidad para dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario. A estos criterios pueden añadirse otros, sin pretender agotar la lista: la estructura en sí de la entidad; la facultad de la agencia para demandar y ser demandada ilimitadamente; el poder de obtener fondos propios en el mercado general de valores a base de su récord económico y sin empeñar el crédito del Estado Libre Asociado; la facultad de adquirir y administrar propiedades sin la intervención del Estado .... Véase, además, *Unión Empleados Carreteras v. J.R.T.*, 119 D.P.R. 116, 117–129 (1987), opinión concurrente.

Como correctamente señaláramos en *A.A.A. v. Unión Empleados A.A.A.*, supra, pág. 456, "[n]ingún criterio es determinante por sí solo del problema que nos ocupa. Debemos examinar en cada caso la conjunción de factores existentes para a su luz resolver si la agencia concernida funciona o no como un negocio privado ...". Del examen de

la Ley Orgánica del Departamento de la Vivienda, ya derogada, se desprende que esa entidad poseía una serie de atributos, facultades y características que, vistas en conjunto, situaban esa entidad entre las corporaciones públicas del E.L.A. Tenía la facultad de contratar, realizar y ejecutar convenios sin la intervención del E.L.A.; aceptar donaciones y aportaciones de entidades públicas y privadas, así como de particulares; demandar y ser demandada; preparar, llevar a cabo, adquirir, arrendar y administrar proyectos de hogares; arrendar con derecho a propiedad, y vender y alquilar solares; invertir cualquier fondo tenido en reserva o que no se utilice de inmediato en propiedades o como garantía; emitir bonos; conceder préstamos garantizados por la Administración Federal de Hogares; ceder y traspasar gratuitamente el usufructo de solares en las urbanizaciones mínimas; adquirir bienes inmuebles por compra a precio aplazado garantizándola con hipoteca sobre dicho inmueble; tomar dinero a préstamo y contraer deudas evidenciando tales obligaciones mediante el otorgamiento de instrumentos negociables y, finalmente, en lo concerniente a la administración de personal, la C.R.U.V. era un administrador individual, entre otras cosas. Véase 17 L.P.R.A. ants. secs. 21–24, 38 y 45.

El hecho de dicha entidad no poseer una junta de directores no alteraba su naturaleza corporativa. Considérese que, incluso, algunas corporaciones privadas pueden operar sin junta de directores y no por ello poseen menos atributos corporativos que las que son gobernadas por una junta. A través de toda la estructura gubernamental del E.L.A. se pueden identificar varias corporaciones públicas en las que el Secretario o jefe administrativo de la agencia a la cual está adscrita la corporación cumple las funciones de una junta de directores. Ya hemos dicho que es prerrogativa de la Asamblea Legislativa determinar qué tipo de estructura habrá de utilizar al crear o establecer una corporación pública. Nótese, además, que al legislador

adscribir la C.R.U.V. al Departamento de la Vivienda, según la disposición antes transcrita, expresó con meridiana claridad que "ambos organismos [C.R.U.V. y Banco de la Vivienda] continuarán funcionando *como corporaciones públicas* con las funciones y programas que dichas secciones o cualesquiera otra les haya conferido". (Énfasis suplido.) 3 L.P.R.A. sec. 441e.[3] No existe fundamento razonable alguno que nos permita concluir que a través de la Ley Núm. 97, *supra*, directa o indirectamente, se interesara cambiar la condición corporativa de la C.R.U.V. Más bien, como hemos podido observar, de ese estatuto surge claramente lo contrario.

Por lo tanto, si la C.R.U.V. era una corporación pública, lo cual implica que poseía una personalidad jurídica distinta y separada del Gobierno central, era la única responsable por sus propios actos y no el E.L.A., a menos que se estableciese cocausalidad en la producción de los daños. Esto último no se ha alegado en este caso. La única alegación en la demanda respecto a la responsabilidad del E.L.A. está fundamentada en que la C.R.U.V. está adscrita al Departamento de la Vivienda.[4] El Art. 3(d) de la Ley Núm. 97, *supra*, 3 L.P.R.A. sec. 441b(d), al cual aluden los demandantes para sostener la responsabilidad del E.L.A., no tiene el efecto de hacer cocausante al Estado por los actos de la C.R.U.V., y menos aún es demostrativo de una

---

[3] El lenguaje utilizado por el legislador denota su intención de mantener la personalidad jurídica de la Corporación de Renovación Urbana y Vivienda (C.R.U.V.) al utilizar el verbo *adscribir* en lugar del verbo *transferir* como ocurre en la sección anterior, 3 L.P.R.A. sec. 441d, la cual suprime una agencia (la Administración de Renovación Urbana y Vivienda) luego de transferir sus facultades y deberes al Departamento de la Vivienda.

[4] En la alegación de la demanda con respecto a la responsabilidad del E.L.A. se señala lo siguiente:

"Que por estar la Corporación de Renovación Urbana y Vivienda de Puerto Rico, por disposición de ley adscrita al Departamento de la Vivienda, teniendo su secretario todos los poderes y facultades que se le confieren a la Junta de dicha Corporación, responde por todos los daños sufridos por los demandantes, el Estado Libre Asociado de Puerto Rico y las aseguradoras X y Z de éstas." Párrafo 13 de la demanda presentada el 20 de junio de 1985 ante el Tribunal Superior, Sala de San Juan.

fusión entre ambas entidades que absorbe en una la personalidad de la otra. Esta disposición facultó al Departamento de la Vivienda a "[d]irigir y supervisar todas las actividades gubernamentales relacionadas con el desarrollo, financiamiento y administración de programas de viviendas de interés social y de proyectos de renovación urbana o rehabilitación en su sitio". 3 L.P.R.A. sec. 441b(d). Esto debe interpretarse a la luz del propósito evidente del legislador al adscribir la C.R.U.V. al Departamento de la Vivienda, que fue uniformar y centralizar la formulación de la política pública relativa a la vivienda en Puerto Rico. Es dentro de esa óptica que cabe interpretar el Art. 3(d) de la Ley Núm. 97, *supra.*

Por otra parte, precisamente, en vista de la delegación en el Secretario de la Vivienda de las funciones de la Junta de Directores de la C.R.U.V., y dado el interés legislativo de centralizar y uniformar la política pública sobre vivienda, la intervención del Secretario en algunos asuntos de la C.R.U.V. no es extraña ni tampoco implicaba una fusión entre ambas entidades. Bajo este estado de situación, era normal y común que el Secretario de la Vivienda participase en algunos de esos asuntos, sin que por ello vinculase al E.L.A.

Por último, los actos negligentes que se alegan en la demanda atañen al mantenimiento y a la conservación de los edificios objeto de este litigio, asunto que estaba bajo el control exclusivo de esta corporación. Era la C.R.U.V. la dueña de los mismos y era la responsable inmediata de la administración y el buen funcionamiento de esos proyectos, a través de su Director Ejecutivo y el personal bajo su control. 17 L.P.R.A. ant. sec. 22(a). Del descargo de la responsabilidad de estos funcionarios, sólo podía quedar obligada la entidad que ellos dirigían y representaban, es decir, la C.R.U.V.

Siendo esta instrumentalidad una corporación pública con personalidad jurídica propia, separada e indepen-

diente del E.L.A., con capacidad para demandar y ser demandada, y dado que era la C.R.U.V. la dueña y *quien tenía la responsabilidad inmediata de administrar y velar por el buen funcionamiento de los proyectos en controversia*, era la única llamada a responder por sus actos. Así, pues, resolvemos que el E.L.A. no era responsable por los actos negligentes atribuibles a la C.R.U.V.

B. *La responsabilidad del E.L.A. al disolverse la C.R.U.V.*

Resta por determinar si la Oficina para la Liquidación de las Cuentas de la C.R.U.V., creada mediante la citada Ley Núm. 55 para pagar las obligaciones y deudas de la C.R.U.V., mantiene una personalidad jurídica distinta y separada del Departamento de la Vivienda y, por lo tanto, del E.L.A.

La Ley Núm. 55, *supra*, no solamente disuelve la C.R.U.V., sino que en su Art. 1 también "ordena la liquidación de todos sus activos y la utilización del producto de esa liquidación para atender sus obligaciones financieras". 17 L.P.R.A. sec. 27. El Síndico Especial es la persona que dirige y administra la Oficina. La Junta Ratificadora de la Liquidación de las Cuentas de la C.R.U.V. es la responsable de aprobar "las transacciones dirigidas a la liquidación de todos los activos de la [C.R.U.V.] y la utilización del producto de la liquidación para atender sus obligaciones financieras, según se dispone en esta ley". Art. 1(b) de la Ley Núm. 55, *supra*, 17 L.P.R.A. sec. 27(b).[5]

El legislador en ningún momento fusionó la Oficina al Departamento de la Vivienda. Por el contrario, la ley dispone que el Síndico Especial asumirá el control de todos los activos y, hasta donde le permitan los activos dis-

---

[5] La propia ley aclara que las transacciones de pago de obligaciones financieras impuestas por sentencia o por órdenes o resoluciones de organismos administrativos que sean finales y firmes están exceptuadas de la ratificación por parte de la Junta Ratificadora.

ponibles, deberá pagar las obligaciones y deudas de la C.R.U.V. Véase el Art. 2 de la Ley Núm. 55, *supra*, 17 L.P.R.A. sec. 27a. Aún más, se concedió a las reclamaciones no prescritas en contra de la C.R.U.V. el término de ciento veinte (120) días siguientes a la fecha de vigencia de la ley para que éstas se presentasen a la Oficina. "No procederá la radicación de ninguna demanda contra la Oficina ni contra la disuelta Corporación a menos que previamente se haya hecho la reclamación que aquí se provee." Art. 4 de la Ley Núm. 55, *supra*, 17 L.P.R.A. sec. 27c.

Conforme a lo resuelto en *A.A.A. v. Unión Empleados A.A.A.*, supra, págs. 455–456, examinemos si existen en la citada Ley Núm. 55 los criterios necesarios para determinar si la Oficina funciona como una empresa privada. Entre los factores allí mencionados consideraremos primeramente que la Oficina goza de autonomía administrativa. Conforme al Art. 9 de la Ley Núm. 55, *supra*, 17 L.P.R.A. sec. 27h, la Oficina tiene "autoridad para demandar y ser demandada y radicar toda clase de acciones judiciales y administrativas, tramitarlas hasta la sentencia o resolución final, desistir o transigirlas". También puede adoptar los reglamentos necesarios para la administración de sus asuntos para lo cual está exento del cumplimiento de la Ley Núm. 170 de 12 de agosto de 1988, conocida como "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". Se le concede al Síndico Especial la potestad para contratar la administración de bienes muebles pertenecientes a la C.R.U.V., tanto con agencias públicas (*e.g.* el Departamento de la Vivienda) como con entidades privadas. Arts. 6 y 13 de la Ley Núm. 55, *supra*, 17 L.P.R.A. secs. 27e y 27l. El Síndico Especial está facultado para:

> comprar, tomar a préstamo o adquirir por cualquier otro medio, vender, ceder, permutar, pignorar, hipotecar, gravar y cancelar toda clase de gravámenes o cargas, total o parcialmente y segregar, agrupar, administrar, arrendar por las cantidades, términos, pactos y condiciones que el Síndico Especial considere

pertinentes. Tendrá, además, la facultad de tomar prestado dando en garantías bienes de la Corporación. Art. 5 de la Ley Núm. 55, *supra*, 17 L.P.R.A. sec. 27d.

Otro de los factores a considerar es que la Oficina goza de un alto grado de autonomía fiscal, aún bajo la consideración de que tiene el propósito sui géneris de autoliquidarse, debido a que su presupuesto incluye los $37, 318, 159, provenientes de los ingresos propios estimados que generará la propia Oficina durante el año fiscal. Para el inicio de las operaciones de la Oficina, el Departamento de Hacienda le adelantó la suma de quinientos mil dólares ($500,000), cantidad que el Síndico devolverá con prioridad a cualquier otra obligación de la Oficina. También se autorizó "al Departamento de la Vivienda y al Banco Gubernamental de Fomento para Puerto Rico a aportar y/o prestar de sus recursos físicos, económicos y de personal para los gastos administrativos y operacionales de la Oficina". 17 L.P.R.A. sec. 27n.([6]) En caso de que no fuese posible cubrir en su totalidad las deudas y obligaciones de la C.R.U.V. con sus propios recursos, la ley aclara que el Síndico Especial así lo notificará al Gobernador y a cada Cámara de la Asamblea Legislativa. La Ley Núm. 55, *supra*, especifica que el Síndico Especial no podrá convenir plan de pago de deudas alguno que requiera la erogación de dineros provenientes del Fondo General del E.L.A. sin la previa autorización de la Asamblea Legislativa. Véanse: Arts. 10, 15, 18 y 20 de la Ley Núm. 55, *supra*, 17 L.P.R.A. secs. 27i, 27n, 27q y 27s.

Debemos tomar en consideración de entre los criterios esbozados en *A.A.A. v. Unión Empleados A.A.A.*, supra, y los mencionados anteriormente, que los empleados de la Oficina nombrados por el Síndico Especial no están cubier-

---

([6]) El hecho de que el Departamento de la Vivienda pueda aportar o prestarle recursos a la Oficina por sí solo no es lo que determina que hubo una fusión, ya que "[n]ingún criterio es determinante por sí solo del problema que nos ocupa". *A.A.A. v. Unión Empleados A.A.A.*, supra, pág. 456.

tos por la Ley de Personal del Servicio Público de Puerto Rico, aún cuando cualquier agencia o instrumentalidad pública, previa autorización del Gobernador, podrá prestar y asignar a la Oficina el personal, los recursos y el equipo que le solicite el Síndico Especial para el cumplimiento de la Ley Núm. 55, *supra*. Este préstamo tiene el propósito de minimizar los gastos de operación y funcionamiento de la Oficina, según dispone el Art. 12 de la Ley Núm 55, *supra,* 17 L.P.R.A. sec. 27k, pero no tiene el efecto de convertirla en parte del Estado privándola de personalidad propia. El Síndico Especial puede contratar los servicios legales necesarios, aún cuando el Departamento de Justicia puede brindar el apoyo legal que sea necesario.

La Oficina funciona como una empresa privada ya que deposita sus fondos en una cuenta establecida en el Banco Gubernamental de Fomento para Puerto Rico, esto es, separada de la cuenta del Gobierno central. Además, mantiene un registro y contabilidad completa y detallada de todas sus cuentas.

▆▆▆▆▆▆ La ley que ordena la disolución de la C.R.U.V. dispuso que los activos y pasivos correspondientes a esta corporación pública serán liquidados por la Oficina. Habiendo examinado los criterios establecidos en la referida ley, concluimos que la Oficina funciona con personalidad distinta y separada del Departamento de la Vivienda y del E.L.A. Resolvemos, entonces, que el E.L.A. no tiene responsabilidad por los actos negligentes atribuibles a la C.R.U.V., aún después de la aprobación de la Ley Núm. 55, *supra*, que ordena la disolución de la C.R.U.V. Sólo cuando el Síndico Especial rinda su informe final de la liquidación de cuentas de la C.R.U.V. y dé por terminada la existencia de la Oficina, habrá una transferencia al Departamento de la Vivienda que consistirá únicamente de los informes, expedientes, archivos y cualesquiera otros documentos, los cuales serán custodiados y conservados por ese Departa-

mento de la manera que exigen las leyes vigentes. Art. 19 de la Ley Núm. 55, *supra,* 17 L.P.R.A. sec. 27r.

 Considerando que ningún pleito entablado contra la C.R.U.V. será desestimado por el solo fundamento de la aprobación de la citada Ley Núm. 55, *procede devolver el caso al tribunal de instancia para que se continúen los procedimientos de forma compatible con esta sentencia, y a tenor con lo dispuesto en el Art. 11 de la referida ley,* supra, *17 L.P.R.A. sec. 27., a la mayor brevedad que permita el calendario judicial.*(⁷)

Por los fundamentos antes indicados, *se dictará sentencia revocando la resolución del Tribunal Superior, Sala de San Juan, y en consecuencia se declara con lugar la moción de desestimación promovida por el Estado Libre Asociado de Puerto Rico en cuanto a éste concierne, devolviendo el caso al foro de instancia y ordenando la continuación de los procedimientos de manera compatible con lo resuelto por este Tribunal.*

Los Jueces Asociados Señores Negrón García y Rebollo López se inhibieron. El Juez Asociado Señor Hernández Denton no intervino.

---

(⁷) El Art. 11 de la Ley Núm. 55 de 9 de agosto de 1991, Leyes de Puerto Rico, pág. 238, en lo pertinente, dispone como sigue:

"Ningún pleito, acción o procedimiento entablado de acuerdo con la ley, por o contra la Corporación o contra cualquiera de los funcionarios o empleados de esa instrumentalidad, en su carácter oficial o en relación con el desempeño de sus deberes oficiales será desestimado por el solo fundamento de la aprobación de esta ley. El Tribunal, a moción de parte interesada o mediante alegación adecuada, presentada en cualquier fecha dentro de los doce (12) meses siguientes a la fecha de vigencia de esta ley que demuestre, a satisfacción del Tribunal, la necesidad de la continuación de dicho pleito, acción u otro procedimiento para resolver las cuestiones envueltas, podrá permitir que el mismo prosiga por o contra la Oficina creada por esta ley para liquidar los activos y pasivos de la Corporación."

En cumplimiento con lo dispuesto en el referido Art. 11, la parte demandante recurrida presentó una solicitud de dictamen judicial ante nos para la continuación del litigio en el tribunal de instancia. Esta moción fue sellada en la Secretaría del Tribunal Supremo el 17 de diciembre de 1991, es decir, dentro de los doce (12) meses siguientes a la fecha de vigencia de la citada Ley Núm. 55.