SENTENCIA
Acude ante nos Plaza de Descuentos, S.E. (Plaza de Descuentos), y nos solicita que revoquemos una sentencia *778 del Tribunal de Apelaciones. En su sentencia, el foro ape-lativo intermedio revocó al Tribunal de Primera Instancia. El foro primario había ordenado al Estado Libre Asociado (E.L.A.) a indemnizar a Plaza de Descuentos por las res-tricciones impuestas sobre la propiedad de esta última. Como cuestión de umbral, debemos determinar si la causa de acción ejercitada por Plaza de Descuentos se encuentra prescrita. Por entender que sí lo está, según la Ley Núm. 46 de 26 de jimio de 1987 (32 L.P.R.A. see. 2923 et seq.), confirmamos.
H
El predio de terreno, objeto de este recurso, es un solar localizado en el barrio Sabana Llana del Municipio de San Juan. Este predio era parte de la finca Berwind, propiedad de la extinta Corporación de Renovación Urbana y Vi-vienda (C.R.U.V.). Esa finca originalmente era de 153.64 cuerdas. En 1976, la Junta de Planificación zonificó el pre-dio de terreno objeto de este recurso y propiedad de la C.R.U.V. como Distrito “P”, es decir, para uso público con el propósito de un desarrollo futuro. Según esta reglamenta-ción, la C.R.U.V. podía desarrollar el predio con la limita-ción de construcción de obras a un costo no mayor de $25,000. Posteriormente, esta limitación se aumentó a $35,000.(1)
En 1984, la C.R.U.V. comenzó el trámite para vender un predio de terreno comprendido en el solar mayor de 3,882.45 metros cuadrados. Esta venta se realizó el 1 de septiembre de 1988 por $1,176,000 a Mueblerías Berrios, Inc. En la venta se mantuvo la zonificación de Distrito “P” *779 que estaba vigente en este predio de terreno hacía doce años.
Este predio de terreno fue objeto de varias consultas en las que se consignó su zonificación como Distrito “P”. Sin embargo, la Junta de Planificación utilizó su discreción para permitir variaciones a los proyectos propuestos, su-jeto al cumplimiento de varias condiciones. No se realizó ninguna de estas obras. A pesar de esto, el 10 de noviembre de 1996, Plaza de Descuentos le compró a Mueblerías Be-rrios alrededor de una tercera parte de los 3,882.45 metros cuadrados que esta última le compró a C.R.U.V. en 1988. Cabe destacar que, antes de esta compraventa, hacía ya veinte años que este predio tenía la limitación impuesta por la zonificación Distrito “P”, que limitaba el valor de las obras que fueran a construirse. Esta zonificación de Dis-trito “P” se hizo constar en la escritura de compraventa entre Mueblerías Berrios y Plaza de Descuento. Este pre-dio, así zonificado, fue adquirido por Plaza de Descuento por $392,000.(2) Después de la venta, Plaza de Descuento suscribió contratos de arrendamientos para ocho negocios de comida por un período de cinco años prorrogables por igual término.
En el 2000, Plaza de Descuentos y los arrendatarios pre-sentaron ante la Administración de Reglamentos y Permi-sos (A.R.Pe.) un anteproyecto para el desarrollo de los ochos negocios de comidas, con un costo total de $33,400, en el límite establecido por la zonificación Distrito “P” ($35,000). A.R.Pe. aprobó este anteproyecto y el permiso de construcción, el 9 de noviembre de 2000 y el 6 de marzo de 2001, respectivamente.
Varios meses después, el 10 de julio de 2001, Plaza de Descuento presentó ante A.R.Pe. una carta en la que in- *780 formó una variación al proyecto aprobado. En ésta, notificó cambios en los materiales que habrían de utilizarse en la obra. Las obras originalmente aprobadas eran materiales de madera y otros combinados. Ahora, los materiales se-rían hormigón armado y columnas de acero. Tras las en-miendas, el municipio de San Juan reiteró su endoso pre-liminar a la obra, pues el proyecto propuesto contravenía su política pública. Además, varios grupos vecinales pre-sentaron querellas contra el proyecto.
El 21 de diciembre de 2001, A.R.Pe. inició un proceso que culminó en la suspensión de los permisos otorgados, ya que las obras violaban la reglamentación establecida para la zonificación de los distritos “P”, porque el nuevo costo de las obras sería de $38,000. Este costo excede el límite de $35,000 establecido para los distritos “P”.
El 19 de febrero de 2003, Plaza de Descuentos presentó ante el Tribunal de Primera Instancia una demanda de interdicto permanente, sentencia declaratoria y daños y perjuicios contra el E.L.A. Alegó que el Estado le incautó su propiedad por más de catorce años. En la demanda, Plaza de Descuentos reclamó una indemnización de $1,000,000 por los daños causados por la anulación del uso productivo de la propiedad, $1,000,000 por las pérdidas económicas y $100,000 por la lesión a su imagen comercial.
El Tribunal de Primera Instancia emitió sentencia par-cial en la que decretó “con lugar” el interdicto permanente. Ese foro ordenó a la Junta de Planificación que reclasifi-cara el terreno aludido conforme al criterio de mejor uso comercial y trasladó a la sala ordinaria del foro primario el asunto sobre la acción por daños.
El Estado alegó, entre otras cosas, que la causa por da-ños estaba prescrita. Sin embargo, el foro primario con-denó al E.L.A. a indemnizar por los daños causados por la zonificación impugnada. El Estado acudió al Tribunal de Apelaciones y alegó, entre otras cosas, que la acción por daños se encontraba prescrita. Ese foro revocó la sentencia *781 recurrida, al aplicar la doctrina de daño autoinfligido, de-bido a que Plaza de Descuentos conocía las limitaciones del terreno antes de adquirirlo, por lo que no podía reclamar la indemnización de un daño que ella misma se causó. De esta decisión acude ante nos Plaza de Descuentos, y el Es-tado reproduce los mismos argumentos que planteó en el Tribunal de Apelaciones.
II
Tanto la Constitución de Estados Unidos como la de Puerto Rico reconocen el derecho que protege uno de los activos más valiosos que tienen los seres humanos, a saber, la propiedad inmueble. P. Muñoz Nazario, ¿Es inconstitu-cional la Ley de Expropiación a la Inversa?, 48 Rev. de Der. Pur. 23 (2008). Las Enmiendas Quinta y Décimocuarta de la Constitución de Estados Unidos y el Art. II, Sec. 9, de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, imponen al Gobierno la obligación de compensar la privación de pro-piedad privada para usos públicos.
La obligación del Estado de pagar una justa compensa-ción puede surgir en tres formas: (1) cuando ejerce directa-mente su poder de dominio eminente instando un recurso de expropiación, (2) por medio de su reglamentación, o (3) cuando ocurre una incautación de hecho al afectar de forma sustancial el uso físico de la propiedad por medio de la reglamentación. Velázquez Velázquez v. E.L.A., 135 D.P.R. 84 (1994); Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943 (1991). Al amparo de la segunda modalidad es que surge una causa de acción para compensar el daño causado durante el período que duró la reglamentación que afectó a la propiedad. Id. Esta causa de acción por daños está disponible para casos de propiedades afectadas por una zonificación temporera realizada por el Estado. Hampton Development Corp. v. E.L.A., 139 D.PR. 877 (1996).
*782 Esta acción por daños tiene un período prescriptivo. La prescripción es una institución que extingue un derecho por la inercia durante un período de tiempo determinado. La prescripción extintiva proviene del derecho civil y está inextricablemente unida al derecho que se intenta reivindicar. Culebra Enterprises Corp. v. E.L.A., supra; Olmo v. Young & Rubicam of P.R., Inc., 110 D.P.R. 740 (1981). En el pasado hemos aplicado por analogía el tér-mino prescriptivo de un año contenido en el Art. 1869 del Código Civil, supra, a acciones por daños como lo sería una reclamación de justa compensación contra el Estado por la incautación temporal de una propiedad privada. Id.
Está claramente establecido que “la Asamblea Legisla-tiva tiene amplia facultad para establecer los términos co-rrespondientes, siempre y cuando no sean tan cortos que violen la cláusula del debido proceso de ley”. Culebra Enterprises Corp. v. E.L.A., supra, págs. 949—950. Véase, ade-más, Alicea v. Córdova, 117 D.P.R. 676 (1986). La prescrip-ción pretende castigar la inercia del titular del derecho que provoca incertidumbres. Id. El término prescriptivo es fundamental para asegurar la solución expedita de reclama-ciones y cumplir con el propósito de evitar que el poder público proteja por tiempo indefinido derechos no reclama-dos por su titular. Id.; M. Albaladejo, Derecho Civil, Barcelona, Ed. Bosch, 1989, T. I, Vol. 2, pág. 496. Con la pres-cripción el legislador establece una importante política pública de justicia al evitar las sorpresas que generan re-clamaciones viejas y además, es reflejo de “la experiencia humana de que las reclamaciones válidas se accionan in-mediatamente y no se abandonan”. Culebra Enterprises Corp. v. E.L.A., supra, pág. 950.
Esta controversia, en última instancia, la armonización de la relación del término prescriptivo de un año con el período máximo de ocho años durante el cual el Estado puede reservar o congelar una propiedad privada en la con-secución de un fin público. En esta medida, se armoniza el *783 término prescriptivo de la acción por daños con el Art. 1868 del Código Civil, 31 L.P.R.A. see. 5298. íd. Esto es, la parte afectada tiene un año para reclamar la indemnización de los daños ocasionados por la reglamentación sobre su pro-piedad, contando desde que el Estado libera su propiedad de las restricciones, y como “máximo, se iniciaría después del octavo año de reserva”. Culebra Enterprises Corp. v. E.L.A., supra, pág. 956.
El período compensable que establecimos en Culebra Enterprises Corp. v. E.L.A., supra, comienza a transcurrir desde que el Estado, por medio de su reglamentación, im-pone una clasificación o condición a la propiedad privada que la restringe indebidamente desde el punto de vista constitucional, lo que activa el derecho a una justa compensación. J.J. Alvarez González, Derecho Constitucio-nal de Puerto Rico y relaciones constitucionales con los Es-tados Unidos: casos y materiales, Bogotá, Ed. Temis, 2009, pág. 666. Así, pues, el término prescriptivo de un año para reclamar por los daños temporeros que la restricción o re-serva del Estado ocasionan al titular de la propiedad co-mienza desde la fecha en que el Estado por medio libera la propiedad o después del octavo año desde la actuación del Estado, lo que ocurra primero.
En Velázquez Velázquez v. E.L.A., supra, amparados en Culebra Enterprises Corp. v. E.L.A., reiteramos el término prescriptivo aplicable tras descartar un período de quince años.
En ese caso [Culebra Enterprises Corp. v. E.L.A, supra], el Tribunal resolvió que el término prescriptivo de una acción de expropiación inversa por alegadas restricciones a la propiedad por el efecto de una reglamentación sobre zonificación era de un año. Entendió el Tribunal que no había diferencia sustan-cial entre una incautación física y una mediante reglamenta-ción que justificara establecer términos prescriptivos diferen-tes para cada una. (Escolio omitido.) L.M. Villaronga, Derecho Constitucional, 64 Rev. Jur. U.RR. 765, 796-797 (1995).
Éste es el término prescriptivo utilizado para la acción *784 por daños que exige el pago al amparo de la norma consti-tucional de justa compensación. Villaronga, op. cit. En los casos de expropiación a la inversa (cuando el dueño insta la acción para “obtener la compensación a que tiene dere-cho”), a los “tribunales generalmente le aplican las misma normas y principios que rigen la acción de expropiación iniciada por el Estado”. Velázquez Velázquez v. E.L.A., supra, págs. 88-89.
El “período prescriptivo de un año para exigir compen-sación por una incautación temporera por reglamentación [comienza] cuando se libera la propiedad de la restricción o cuando se alcanza el octavo año de reserva”. Alvarez Gon-zález, op. cit., pág. 666. Ante esto, es forzoso concluir que la acción de daños por incautación temporal prescribirá, como máximo, a los nueve años desde la reserva, reglamentación o acción del Estado. Nuestra Asamblea Legislativa diseñó este período mediante la Ley Núm. 46, supra, al regular el proceso de congelación o la reserva de una parcela por parte del Estado.
El período dispuesto por la Ley Núm. 46, supra, co-mienza a transcurrir desde la “afectación”. Art. 3 de la Ley 46 (32 L.P.R.A. see. 2925). Esta afectación ocurre con la denegación de todo uso productivo con el plan establecido por el Estado. Respecto al caso que nos ocupa, la “afecta-ción” ocurre con el “plan vial adoptado por la Junta de Pla-nificación, o porque los terrenos han sido destinados para uso público en un mapa de zonificación o plan de uso de terreno”. Art. 2 de la Ley Núm. 46 (32 L.P.R.A. see. 2924). La “reserva” es la “actuación de un organismo guberna-mental competente mediante la cual separe terrenos priva-dos para fines públicos”. Id. Por otro lado, el período pres-criptivo de un año para la acción por daños que establecimos en Culebra Enterprises Corp. v. E.L.A., supra, comienza a contar desde que la propiedad se libera, pero hasta un máximo “del octavo año de reserva”. Culebra Enterprises Corp. v. E.L.A., supra, pág. 956. Véanse: además, *785 Muñoz Nazario, op. cit., págs. 28-30; L.M. Villaronga, Derecho Constitucional, 66 Rev. Jur. U.RR. 391, 392-401 (1997).
III
Es preciso aclarar que la sentencia parcial que concedió el interdicto permanente no es la controversia que tenemos ante nuestra consideración. Esta controversia fue resuelta mediante una sentencia parcial. El Estado presentó la de-fensa de prescripción frente a la acción por daños, con in-dependencia del interdicto permanente dictado. La senten-cia parcial se limitó a la demanda interdictal y a la sentencia declaratoria y transfirió a una sala ordinaria la acción por daños. Así pues, para efectos de la doctrina de cosa juzgada, no hay incongruencia entre la sentencia que hoy tenemos ante nuestra consideración y la sentencia par-cial para conceder el interdicto, porque son acciones diferentes.
Para resolver este recurso es necesario determinar la fecha en que se realizó la alegada “reserva” o incautación que afectó sustancialmente el uso de la propiedad en cuestión. Esta fecha es esencial para poder fijar el plazo prescriptivo de un año para la acción por daños. Según discutimos, este período comienza a contar desde que se libera la propiedad de la restricción impuesta por el Estado o desde que transcurren ocho años, después de la “reserva” o reglamentación, lo que ocurra primero. Véase Culebra Enterprises Corp. v. E.L.A., supra.
Es preciso auscultar en este caso cuándo ocurrió la in-cautación o “reserva” para determinar entonces desde qué fecha comenzó a contar el plazo de un año de prescripción. Para 1976, aunque la C.R.U.V. era propietaria del predio objeto de este recurso, la Junta de Planificación zonificó este predio como Distrito “P”. Según las alegaciones de Plaza de Descuentos, esta clasificación fue la que consti- *786 tuyo la incautación de su propiedad. Según se desprende de la propia Ley Núm. 46, supra, la alegada reserva en este caso ocurrió cuando la Junta de Planificación destinó los terrenos para el uso público al establecer la zonificación Distrito “P”.
Plaza de Descuento presentó su acción en el 2003. Esto es, casi treinta años después de la reserva. Como explica-mos, el período prescriptivo comenzó a contar desde la re-serva (1976) y como no fue liberado en ocho años, es a partir de 1984 que comenzó a transcurrir el año de prescripción. Para 1985, la causa de acción se encontraba prescrita.(3) Tanto Mueblerías Berrios como Plaza de Des-cuento conocían las limitaciones impuestas cuando adqui-rieron la propiedad. Debieron saber, entonces, que la posi-ble acción en daños por las restricciones a la propiedad se encontraba prescrita.
En Palazzolo v. Rhode Island, 533 U.S. 606 (2001), el Tribunal Supremo de Estados Unidos decidió que la incau-tación reglamentaria no puede ser denegada por el único hecho de que el comprador conocía de la regulación antes de comprar. Es claro que no estamos ante ese supuesto, pues la prescripción que estableció el legislador no prohíbe la acción por daños de los nuevos adquirientes. Ahora bien, toda acción debe ser ejercitada en el término prescriptivo dispuesto, ya sea por el dueño original o por un adquiriente posterior. Tanto Mueblerías Berrios como Plaza de Des-cuento adquirieron a sabiendas de que la posible causa por daños se encontraba prescrita.
El término prescriptivo no cambia por el mero hecho de que el antiguo propietario fuera una entidad creada por el gobierno. Recordemos que la C.R.U.V. era una corporación pública y como tal, “funciona[ba] como empresa o negocio *787 privado”. Pagán et al. v. E.L.A. et al., 131 D.P.R. 795, 805 (1992). Por su naturaleza, “la C.R.U.V. era una corporación pública, lo cual implica que poseía una personalidad jurí-dica distinta y separada del Gobierno Central”. Id., pág. 807. “La C.R.U.V. [era] una corporación pública con perso-nalidad jurídica propia, separada e independiente del E.L.A., que además goza de capacidad para demandar y ser demandada”. Fred y otros v. E.L.A., 150 D.P.R. 599, 607 (2000).
Es evidente que cuando el Estado clasificó el terreno no era su propietario, pues lo era la C.R.U.V., entidad sepa-rada e independiente del Estado. Es un error adscribirle la actuación de la Junta de Planificación a la C.R.U.V. La C.R.U.V., en su momento, se vio afectada por las restriccio-nes reglamentarias hechas por la Junta de Planificación. Como toda corporación pública, la C.R.U.V. estuvo sujeta a los términos prescriptivos como cualquier otra persona ju-rídica distinta al gobierno.
Por ende, no estamos ante una acción que no pudo ser ejercitada, pues el derecho le corresponde al dueño de la propiedad que se vio afectado por la actuación del Estado. Cuando Mueblerías Berrios y Plaza de Descuento adquirie-ron la propiedad, la acción por daños se encontraba prescrita. Precisamente, la zonificación de la propiedad se hizo constar en la escritura de compraventa, entre Plaza de Descuento y Mueblerías Berrios, y debió ser uno de los factores tomados en cuenta para pactar el precio.
Este punto de partida para determinar la prescripción es cónsono con lo que la Ley Núm. 46, supra, dispone. Sería un contrasentido afirmar que el término prescriptivo co-menzó a contar desde 1996, cuando Plaza de Descuento adquirió la finca o desde 2002, fecha cuando A.R.Pe. revocó el permiso otorgado. Esto no solamente sería contrario a nuestras pasadas expresiones en Culebra Enterprises Corp. v. E.L.A., supra, y a la ley, sino que convierte esta acción en imprescriptible.
*788 Si tomáramos como fecha de partida 1996, fecha cuando el último comprador, Plaza de Descuento, adquirió la pro-piedad, bastaría con vender o enajenar la propiedad para crear un período prescriptivo nuevo. De igual forma, no puede sostenerse que la fecha para computar el período prescriptivo es desde el 2002, fecha cuando A.R.Pe. revocó el permiso otorgado. La revocación se debió a que Plaza de Descuentos enmendó la obra que habría de construirse e hizo de ésta una obra contraria a la reglamentación aplicable. Acoger esta teoría, además de estar en conflicto con el derecho aplicable, haría de esta acción por daños una imprescriptible. Bastaría con solicitar un permiso im-procedente para crear un término prescriptivo nuevo. Esto se agudiza en situaciones como la del predio que nos ocupa, ya que éste fue objeto de varias consultas ante la Junta de Planificación.
Lo contrario iría contra la regla general que dispone que los derechos y las acciones se extinguen por la prescripción a menos que la ley haya dispuesto otra cosa. Arts. 1830, 1832, 1838 y 1861 del Código Civil, 31 L.P.R.A. sees. 5241, 5243, 5249 y 5291. Véanse, además: M.J. Argañarás, La prescripción extintiva, Argentina, Ed. T.E.A., 1966, pág. 35; J. Puig Brutau, Caducidad, Prescripción Extintiva y Usu-capión, 3ra ed., Barcelona, Ed. Bosch, 1996, págs. 45-52.
No estamos frente a un término prescriptivo que rena-ció, cuestión que ocurre cuando la parte favorecida con la prescripción ganada renuncia a su derecho de invocar esta defensa. L. Diez-Picazo, La prescripción extintiva: en el Có-digo Civil y en la jurisprudencia del Tribunal Supremo, 2da ed., Madrid, Ed. Thomson Civitas, 2007, pág. 144. Es-tos supuestos de renacimiento del derecho ocurren cuando el derecho se encuentra prescrito. Id. También es diferente el caso de la interrupción, pues ésta supone un derecho que se encuentra en curso de prescribir y no ha prescrito. Id. En nuestro caso, la acción por daños prescribió y el Estado no ha renunciado a la prescripción ganada. El Estado no *789 responde a una acción nueva e independiente cada vez que la propiedad se transfiere a otro titular o cada vez que se solicita una autorización gubernamental.
Ni la fecha de adquisición del terreno ni la denegación del uso solicitado por Plaza de Descuento constituyeron la “reserva” que nuestra jurisprudencia y la ley disponen. Pro-cede desestimar la demanda por daños ante la defensa de prescripción argumentada por el Estado. Debido a que la causa de acción objeto de este recurso se encuentra pres-crita, es innecesario atender la doctrina de daño autoinfligido.
IV
Así pues, por los fundamentos expuestos, confirmamos la sentencia del Tribunal de Apelaciones, aunque por otro fundamento. Se desestima por prescripción la acción por daños instada por Plaza de Descuentos.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente Señor Hernández Den-ton concurrió con el resultado con una opinión escrita, a la cual se unió la Jueza Asociada Señora Fiol Matta. La Juez Asociada Señora Rodríguez Rodríguez concurrió con el re-sultado sin opinión escrita.
(Fdo.) Aida Ileana Oquendo Graulau Secretaria del Tribunal Supremo
— O —

 Luego de la presentación de la demanda en este caso, el 13 de marzo de 2003 esta zonificación “P” se modificó para que fuera clasificada como Distrito Rotacional “D”. Sin embargo, ambas clasificaciones son reservaciones de la propiedad para el beneficio público. Por lo tanto, el cambio de zonificación no altera la controversia ante nos.

 La compraventa por $392,000 fue para un predio menor compuesto por aproximadamente una tercera parte del predio de terreno comprado por Mueblerías Berrios ocho años antes y que le costó entonces $1,176,000.

 Aun si utilizáramos la fecha cuando Mueblerías Berrios advino dueño de la propiedad, el resultado sería el mismo porque Mueblerías Berrios adquirió en 1984 la propiedad ya zonificada con una clasificación Distrito “P”. Eso nos obliga a con-cluir que para el 2003 la acción por daños estaba prescrita.